UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

GERARD WALSH, and his wife,
ROSE MARIE ANN WALSH,

     Plaintiffs,

v.

GRUPO PINERO, a foreign company; and
BAHIA PRINCIPE, a foreign company d/b/a
Grand Bahia Principe Jamaica;

     Defendants,
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, GERARD WALSH and ROSE MARIE ANN WALSH, sue Defendants, GRUPO PINERO, a foreign company; BAHIA PRINCIPE, a foreign company d/b/a Grand Bahia Principe Jamaica and further states as follows:

**GENERAL ALLEGATIONS AS TO ALL COUNTS**

Jurisdiction and Venue

1. This is an action in diversity under 28 U.S.C. §1332 for personal injury and/or all other applicable law with damages in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest and costs.

2. Venue is proper in the U.S. District Court, Southern District of Florida, pursuant to 28 U.S.C. §1391.

3. At all times material hereto, Plaintiffs, Gerard Walsh ("Mr. Walsh"), and his wife at all times material hereto, Rose Marie Ann Walsh ("Mrs. Walsh"), were citizens of the United States and were domiciled within this district, in Pompano Beach, Florida.

1

4. At all times material hereto, Defendant, GRUPO PINERO ("GP") was and is a foreign company based in Spain, which owns various subsidiaries or divisions including Co-Defendant BAHIA PRINCIPE.

5. Defendant, GP, owns and/or operates the Grand Bahia Principe Jamaica through its subsidiary and co-Defendant BAHIA PRINCIPE. Further, GP conducts substantial and not isolated business in Florida and the United States through its agent, BP USA Travel, Inc. ("BP USA Travel"), located at 8726 NW 26th Street, Suite 25, Doral, Florida 33172 and registered agent Corporation Company of Miami, 201 S. Biscayne Boulevard, 15th Floor, Miami, FL 33131. BP USA Travel is a tour operator whose purpose is to increase the number of tourists from the United States, specifically Florida to the Bahia Principe resorts. Therefore, GP is subject to personal jurisdiction pursuant to Fla. Stat. § 48.193(1)(a) and Fla. Stat. §48.193(2).

6. At all times material hereto, Defendant, BAHIA PRINCIPE ("BAHIA") was and is a foreign company, which owns and/or operates a group of hotels and resorts under the "Bahia Principe" flag. Further, BAHIA conducts substantial and not isolated business in Florida and the United States through its agent, BP USA Travel, located at 8726 NW 26th Street, Suite 25, Doral, Florida 33172 and registered agent Corporation Company of Miami, 201 S. Biscayne Boulevard, 15th Floor, Miami, FL 33131. BP USA Travel is a tour operator whose purpose is to increase the number of tourists from the United States, specifically Florida to the Bahia Principe resorts. Therefore, BAHIA is subject to personal jurisdiction pursuant to Fla. Stat. § 48.193(1)(a) and Fla. Stat. §48.193(2).

7. Defendant, BAHIA, is the owner and/or operator of the Grand Bahia Principe Jamaica resort located in Jamaica.

8. At all times material hereto, Defendant BAHIA was and is an agent of GP. BAHIA and GP are in a business relationship and/or partnership or joint ventures, in which BAHIA would own and/or operate the Grand Bahia Principe Jamaica. BAHIA was created to own and operate various Bahia Principe resorts, which are integral to GP's financial and business interests.

9. At all times material, Defendant, BAHIA accepted responsibility for and acted within the actual, express or implied authority of GP in its capacity as a Bahia Principe resort operator.

10. GP, as principal, had control or right to control BAHIA in the discharge of its duties as a Bahia Principe resort operator.

11. At all times material, BAHIA was the agent or apparent agent of GP. Defendant, BAHIA owns and/or operates the Grand Bahia Principe Jamaica. Plaintiff justifiably relied on the apparent agency relationship between GP and BAHIA and further suffered a detriment in reliance on representations made by BAHIA that it owned and operated the Grand Bahia Principe Jamaica, a GP resort.

Events Giving Rise to Claim

12. The claim began with booking in the United States, when, using Defendant's interactive website and booking through BP USA, Plaintiffs purchased their trip to BAHIA.

13. On June 29, 2013, Mr. and Mrs. Walsh had been at BAHIA for three days. Mr. Walsh had felt fine all vacation and had no history of any of the symptoms he exhibited later that evening.

14. At 7:00 p.m. Mr. and Mrs. Walsh went to a dinner buffet at the Resort.

15. There Mr. Walsh took the last two hamburgers on the tray.

16. These were the first hamburgers he had at the Resort. Even with garnish on them, they tasted odd to him, but Mr. Walsh thought maybe the meat was different in Jamaica than he was used to.

17. After dinner, his stomach felt queezy, so he and his wife went back to the room.

18. Over the next few hours, Mr. Walsh's condition worsened. He went from his stomach feeling queasy, to nauseated, to diarrhea at 2:00 a.m., to severe diarrhea, fever and chills, headache ("head ready to explode"), naseau, vomiting and severe weakness.

19. By the morning of July 1st, it became obvious to Mr. Walsh he was not getting better on his own.

20. He had the shuttle service take him to the clinic at the resort, Hospiten Jamaica LTD.

21. When Mr. Walsh arrived at the clinic he filled out in the clinic's paperwork with what he thought he ate was the hamburger that made him ill.

22. Mr. Walsh was treated with I.V. fluids, Zantac for heartburn, Gravol for nausea, Baralgin to reduce inflammation, pain and fever, and Levofloxacin to fight bacteria in the body.

23. On 7/4/2013 after returning to the U.S., Mr. Walsh was admitted to the Broward Health Imperial Point with an admitting diagnosis of acute kidney failure. The records indicated gastroenteritis with severe volume depletion resulting in kidney injury, hypertension, one of the causes of which is food poisoning.

24. Mr. Walsh was also seen by Nephrologist, Gabriel Valle, M.D., who indicated renal dysfunction, concentrated urinalysis and micro hematuria, and trival proteinuria,

hyponatremia, anion gap metabolic acidosis, and leukocytosis, one of the causes of which is food poisoning.

25. Mr. Walsh was seen at Neurology of South Florida. Mr. Walsh complained that he feels mentally impaired.  Dr. Calise diagnosed memory loss, headache and encephalophy. Dr. Calise stated that Mr. Walsh most likely suffered from a mild sub-clinical meningoencephalitis, which is the inflammation of the membranes of the brain and the adjoining cerebral tissue, one of the causes of which is food poisoning.

26. Mr. Walsh has suffered various and serious permanent personal injuries, serious impairments of bodily function and/or other personal injuries and emotional injuries all to plaintiffs great loss and permanent detriment. Plaintiff's losses, injuries, medical expenses, and damages are continuing and permanent in nature, and plaintiff will suffer great pain, anguish, sickness and agony in the future.  Plaintiff also has suffered wage loss and will suffer loss of earnings/earning capacity in the future.

## COUNT I - BREACH OF IMPLIED WARRANTY OF FITNESS

Plaintiff, Gerard Walsh, sues defendants and states:

27. Plaintiffs reallege paragraphs 1 to 26.
28. As part of the restaurant food and liquids which were inherent in the plaintiff's purchase, defendants impliedly warranted to provide food and liquid that were uncontaminated.
29. However, the food and/or liquid provided by defendants was contaminated, rendering it unreasonably dangerous.
30. Defendants are liable to Mr. Walsh for damages sustained as a result of its breach of the Implied Warranty of Fitness.

WHEREFORE, plaintiff demands damages against the defendants, costs and all other relief that is just and equitable under the circumstances.

### COUNT II – NEGLIGENCE

Plaintiff, Gerard Walsh, sues defendants and states:

31. Plaintiffs reallege paragraphs 1 to 26.

32. Defendants owed a duty to their customers, including Mr. Walsh, to maintain their restaurant in a reasonably safe condition, to refrain from creating unreasonably dangerous conditions in it, and/or to correct any known, unreasonably dangerous conditions of which they reasonably should have been aware.

33. Defendants breached that duty by failing to maintain a reasonably safe condition in their restaurant, by creating an unreasonably dangerous condition in the restaurant by their actions or failure to act, and/or by not taking adequate precautions to ensure the prevention of serving Mr. Walsh contaminated food or drink.

34. The negligent condition was caused by the defendants or was known to the defendants or existed for a sufficient length of time so that the defendants should have known of it with due care.

WHEREFORE, plaintiff demands damages against the defendants, costs and all other relief that is just and equitable under the circumstances.

### COUNT III-RES IPSA LOQUITUR

Plaintiff, Gerard Walsh, sues defendants and states:

35. Plaintiffs reallege paragraphs 1-26.

36. The circumstances of the occurrence were such that, in the ordinary course of events, Mr. Walsh would not have suffered food poisoning in the absence of negligence.

37. The instrumentality causing the injury (the food or drink served Mr. Walsh):

    A. Was in the exclusive control of the defendants at the time it caused the injury, or

    B. Was in the exclusive control of the defendants at the time that the negligent act or omission must have occurred, and the instrumentality, after leaving the defendants' control, was not improperly used or handled by others or subjected to harmful forces or conditions.

38. Therefore, by inference, the defendants were negligent.

39. Defendants' negligence caused the plaintiff's injuries.

WHEREFORE, plaintiff demands damages against the defendants, costs and all other relief that is just and equitable under the circumstances.

## COUNT IV – LOSS OF CONSORTIUM

The plaintiff, Rose Marie Ann Walsh, hereby sues defendants and alleges:

40. Plaintiff realleges paragraphs 1-26, 28 – 30, 31 – 34, and 35 - 39.

41. Rose Marie Ann Walsh is the wife of Gerard Walsh and was at all times material hereto.

42. Gerard Walsh has suffered from the food poisoning, and his wife, Rose Marine Ann Walsh has suffered and will continue to suffer physical and emotional damages as well as damages through the loss of companionship, comfort, society and services of her husband, Gerard Walsh.

WHEREFORE, plaintiff, Rose Marie Ann Walsh, as wife of Gerard Walsh, demands judgment for damages against defendants, costs, and all other relief that is just and equitable under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

Dated this 7th day of January, 2016.

                        Respectfully submitted,

                        PETER M. COMMETTE, P.A.
                        Attorney for Plaintiffs
                        1323 Southeast 3rd Avenue
                        Fort Lauderdale, FL 33316
                        Phone: 954-764-0005
                        Fax: 954-764-1478
                        Email: PMC@commettelaw.com
                        Secondary Email: pmcommette@aol.com
                        Secondary Email: Paralegal1@commettelaw.com


By:     */s Peter M. Commette*
            PETER M. COMMETTE, ESQ.
            Florida Bar No. 350133